**Edwin D. BOULWARE et al., Plaintiffs,**

**v.**

**Victor F. BATTAGLIA et al., Defendants.**

**Civ. A. No. 3869.**

United States District Court,
D. Delaware.

May 20, 1971.

Emmett J. Conte, Jr., Wilmington, Del., for plaintiffs.

Andrew B. Kirkpatrick, Jr., and Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This action comes before the Court on the defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Although the complaint contains no jurisdictional allegations, the Court's jurisdiction has not been challenged. However, the Court notes here that which will become apparent hereafter—28 U.S.C. § 1343 provides the jurisdictional basis for this action.

Plaintiffs [1] were at all pertinent times employees of the City of Wilmington, Department of Public Safety. All of the defendants [2] with the exception of Victor F. Battaglia were also so employed. Defendant Battaglia was the Director of the Law Department of the City of Wilmington. Complaint, ¶ 1.

Since this is a motion to dismiss the complaint for failure to state a claim, the facts alleged in the complaint must be taken as true for purposes of this motion. In brief, the complaint indicates that plaintiff police officers were subjected to internal police disciplinary proceedings, based upon an investigation alleged to have been controlled by defendant Battaglia, and thereafter disciplined in accordance with the decision of a "Trial Board" constituted pursuant to the Regulations of the Bureau of Police. Plaintiffs allege that during this process certain of their civil rights were violated and that each of the defendants participated in, conspired together to effect and/or directed and controlled the denial of these civil rights.

The complaint alleges that from April 11 through April 14, 1969, certain telephone conversations between some of the parties to this litigation were illegally transcribed by the defendants Chickadel and Valiante, in violation of plaintiffs' civil rights, and under orders from defendant Battaglia. Complaint, ¶ 19. The defendants are also alleged to have violated plaintiffs' civil rights in that they interrogated plaintiffs without benefit of counsel on both April 14 and 17, 1969, and accused them of criminal conduct. Complaint, ¶¶ 20, 21.

On May 2, 1969, defendants White and Sylwestrzuk preferred charges against·

---

1. Plaintiffs are Edwin D. Boulware, Lenox J. K. Smith, Frank J. Shahan, Michael J. Maloney and Joe M. McNair.

2. Defendants are Victor F. Battaglia, Samuel P. Chickadel, Nicholas M. Valiante, Andrew J. Turner, Donald E. Bozman, Charles H. Shockley, William O'Rourke, John T. McCool, James F. White, and Edward A. Sylwestrzuk.

each of the plaintiffs alleging violations of the Rules and Regulations governing the Bureau of Police. Plaintiffs Boulware, Maloney, McNair and Smith were charged with neglecting to report violations of the Rules and Regulations governing the Bureau of Police of which they had knowledge to their commanding officer. Smith was also charged with conduct unbecoming an officer as was plaintiff Shahan. Plaintiffs allege that the filing of the charges violated their civil rights. Complaint, ¶ 22.

The specifications of charges against the plaintiffs are set out in the margin;[3] these reveal the nature of the conduct of which plaintiffs were accused. The veracity of the charges, however, need not concern the Court at this point. Plaintiffs allege that the specifications noted in the margin violated their civil rights "in that no competent evidence substantiated any specification." Complaint, ¶ 24.

On May 14, 1969, the defendants convened a Trial Board, which plaintiffs allege to have violated their civil rights. The composition of the Trial Board—defendants Bozman, Shockley and Turner —is also alleged to have violated plaintiffs' civil rights. Complaint, ¶ 23. On May 21, 1969, the Trial Board announced its decision which, the complaint states, was "ordered by defendant McCool and approved by defendant O'Rourke." Complaint, ¶ 25. The Trial Board found all the plaintiffs guilty as charged, and these guilty verdicts are alleged to have been in violation of the plaintiffs' civil rights because the Board failed to follow the Rules and Regulations of the Board and "employed no recognized procedure to insure due process for the admission and exclusion of evidence and for determination of burden of proof." Complaint, ¶ 26.

The plaintiffs were thereafter sentenced to varying periods of probation, extra duty (without pay) and reduction in rank,[4] although the complaint does not state which of the defendants imposed sentence. Complaint, ¶ 27. The com-

3. Paragraph 24 of the Complaint states:
   24. The specification of charges against plaintiffs Maloney, McNair, and Boulware were as follows:
   That between December of 1968 and March of 1969, numerous discussions were held by members of the Vice Squad who were planning and contemplating to place Mr. Victor Battaglia, the City Solicitor, into a compromising position with a female, so photographs could be taken.
   It was alleged in the specification against plaintiffs Maloney and McNair that each of them heard and was aware of these discussions and failed to report these incidents. It was further alleged in the specification against plaintiff Boulware that he heard and was aware of these discussions and failed to take proper action by reporting this incident.
   The specification of charges against plaintiffs Smith and Shahan were as follows:
   That between December 1968 and March 1969, Sgt. Smith was directly involved in formulating a plan to place Mr. Victor Battaglia, the City Solicitor, into a compromising position with a female and also set up the photograph assignment with a certain member of the Vice Squad.

   That between December 1968 and March 1969, numerous discussions were held by members of the Vice Squad who were planning and contemplating to place Mr. Victor Battaglia, the City Solicitor, into a compromising position with a female, so photographs could be taken. Sgt. Lenox Smith heard and was aware of these discussions and failed to take proper action by reporting this incident.
   That between December 1968 and March 1969, Patrolman Shahan was directly involved in the discussions to place Mr. Victor Battaglia, the City Solicitor, into a compromising position with a female. Patrolman Shahan volunteered to take the pictures of the affair.
   Defendant Chickadel was the only person listed on the specifications as a witness with the exception of the specification against Plaintiff Shahan which also set forth the name of Plaintiff McNair as a witness.

4. Plaintiff Boulware was allowed to, and apparently did, retire from the police department prior to the completion of his "extra duty" sentence. Complaint, ¶ 27.

plaint further alleges that the sentences were served by each plaintiff and that they violated plaintiffs' civil rights.

The final allegation of defendants' infringing plaintiffs' civil rights is that defendants required each of the plaintiffs to submit "written reports" concerning the incident

> with knowledge that this requirement contradicted the advice of counsel each plaintiff sought and received; in the failure to provide any avenue of review; in the fact that no investigation and no evidence indicated any conspiracy as charged; in the refusal to provide, after legitimate request, copies of statements made by all plaintiffs, which refusal continues to the present date, in the delay of the transcription of the Trial Board proceedings. Complaint, ¶ 28.

The complaint states that these activities of the defendants were in violation of 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 47 U.S.C. § 605. The question of whether the plaintiffs have asserted a claim under § 1983 is a relatively close one and will be discussed at some relative length. Any reliance on the other two statutes is frivolous to say the least, and these will be dispensed with first.

■ First, in their briefs plaintiffs assert that subsections (2) and (3) of § 1985 are applicable to this case.[5] It is perfectly apparent, however, that there is no allegation in the complaint that would be sufficient, no matter how liberally the complaint is interpreted, to ground an action under any provision of § 1985. Plaintiffs have not alleged willful discrimination nor have they suggested that this case involves a denial of equal protection or equal rights. Section 1985 is not applicable to a case that does not involve these factors. See, e. g., Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Elmwood Proper-

ties, Inc v. Conzelman, 418 F.2d 1025, 1028 (7th Cir. 1969); Kletschka v. Driver, 411 F.2d 436, 447 (2nd Cir. 1969); Meredith v. Allen County War Mem. Hosp. Commission, 397 F.2d 33, 35 (6th Cir. 1968); Birnbaum v. Trussell, 371 F.2d 672, 676 (2nd Cir. 1966); Hoffman v. Halden, 268 F.2d 280, 292 (9th Cir. 1959). Thus, it is quite obvious that § 1985 has no place in this action, or at least that plaintiffs have not stated a claim under § 1985 upon which relief can be granted.

■ Second, plaintiffs' citation of 47 U.S.C. § 605 in the context of this case is quite puzzling. As defendants note in their brief, § 605 was amended by the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351, 82 Stat. 197. The revised statute and legislative history indicate that the applicability of § 605 to the allegations in this case in 1969 is subject to serious doubt. Section 605 refers only to radio communications except for the opening provision which apparently covers telephones but is limited to "communications personnel." See, Senate Report No. 1097 (90th Cong., 2nd Sess.1968), 2 U.S.Code Cong. & Admin.News 2196–2197 (1968). Since all of the defendants are city employees, they are not communications personnel. Also, plaintiffs allege that the intercepted communications were by telephone rather than radio. Complaint, ¶ 19. Therefore, § 605 could not apply.

The defendants suggest in their brief that the statute for which plaintiffs were searching is 18 U.S.C. § 2511, and the Court is quite certain that Chapter 119 of Title 18 has important bearing on the question of whether plaintiffs' civil rights could have been violated by the interception or transcription of telephonic communications by eavesdropping devices or other means as they allege in their complaint. It may be that the interceptions were authorized pursuant to 18 U.S.C. §§ 2516–2518, or that prior

---

5. These subsections will not be reproduced here; they are relatively lengthy and even a cursory reading of their provisions indicate that they should not apply to this action.

consent or cooperation was obtained. 18 U.S.C. § 2511(2) (c). Of particular importance, of course, is 18 U.S.C. § 2520 authorizing civil damages for violations of Chapter 119.

Plaintiffs have not adequately explored the legal theories pertinent to their case in this area of the law, and the Court need not develop plaintiffs' case for them in this opinion. Suffice it to say that the complaint, liberally construed, does not state a claim for relief under a statute or constitutional provision on the basis of illegal interception of telephone calls.[6]

Plaintiffs' main argument is that they have stated a claim under 42 U.S.C. § 1983 [7] since they have alleged that defendants have subjected them to the deprivation of a number of rights secured to them by the U. S. Constitution and federal laws. Interpreting the complaint liberally plaintiffs have alleged that the defendants have deprived them of several fundamental constitutional rights—the right to counsel, the right not to incriminate themselves,[8] the right to due process of law and perhaps the right to be free of unreasonable searches and seizures.[9] Plaintiffs have alleged these deprivations in conclusory terms. The sole question before the Court is whether the facts alleged support the allegation that these plaintiffs were deprived of their civil rights in violation of § 1983.

█ At the outset of this discussion, it might be best to state clearly what is not involved in the Court's decision today. Defendants main argument in support of their motion for dismissal of the complaint is that the plaintiffs have no federally protected right to be employed on the police force of the City of Wilmington and, therefore, their disciplinary proceedings are a matter of state administrative law not subject to federal review in an action such as this. It is, of course, quite true that no citizen of the City of Wilmington has a federally protected right to be employed by the city as a police officer or in any other capacity. Nor do those persons presently employed as police officers have a federally protected right to be free from police charges, hearings and disciplinary sentences. The error in the defendants' argument on this score, however is found in their conclusion that plaintiffs' complaint alleges no more than the violation of these "rights" which they do not have.

Defendants place their main reliance on Charters v. Shaffer, 181 F.2d 764 (3rd Cir. 1950) and Dorsey v. NAACP, 408 F.2d 1022 (5th Cir. 1969). Those cases undoubtedly support the position that the defendants have taken—no one has a federal right to a city job—but

6. Defendants' main, if not sole, argument on this issue was that the interceptions are not covered by the statutes in question because they were consented to by one party to the conversation. If plaintiffs amend their complaint, defendants' contention will be merely a matter of fact that is part of the defendants' case, and the defendants will be given ample opportunity to prove their allegation. The complaint is insufficient in this regard not because of defendants' factual contentions but because the complaint does not allege facts sufficient to persuade the Court that a civil right could have been violated. Cf. People v. Canard, 257 Cal.App.2d 444, 65 Cal.Rptr. 15, 28–29 (1967).

7. 42 U.S.C. § 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8. Cf. Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation of City of New York, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

9. The allegation that defendants illegally intercepted phone conversations may be read as an allegation of a 4th Amendment violation.

that proposition has far more persuasive support, if any were needed at all.[10] *Charters* and *Dorsey*, however, do not cover the facts alleged in this complaint. In *Charters* the *per curiam* opinion states that the plaintiff there alleged only that the township commissioners refused to reinstate him as a township policeman. The Third Circuit stated that the only right of his that had been violated, if any had been violated, was based solely on Pennsylvania law.[11] The implication is clear—the plaintiff had neither alleged nor proved a deprivation of a federal right, statutory or constitutional.

*Dorsey*, which relies on *Charters*, involved apparently similar factual circumstances. Mr. Dorsey was dismissed from a city police force as a result of an incident in which he was accused of kidnap and assault. He appealed to the civil service board pursuant to the Louisiana Constitution and was reinstated. Thereafter a "public outcry"—allegedly engineered by the NAACP—resulted in the reversal of that decision to reinstate and the suspension of Dorsey pending his criminal trial. At this point Mr. Dorsey, instead of pursuing his state judicial review procedures under the Louisiana Constitution, sued the NAACP in federal court under § 1983. In passing on this claim, the Fifth Circuit stated at 1023–1024 of 408 F.2d:

10. For example, the Supreme Court recognized and dealt with the same argument in support of the dismissal of public employees based on a broad loyalty oath in Wieman v. Updegraff, 344 U.S. 183, 191–192, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952):

We are referred to our statement in *Adler* [Adler v. Board of Educ., 342 U.S. 485 [72 S.Ct. 380, 96 L.Ed. 517] (1952)], that persons seeking employment in the New York public schools have 'no right to work for the State in the school system on their own terms. United Public Workers v. Mitchell [330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754] * * *. They may work for the school system upon the reasonable terms laid down by the proper authorities of New York.' 342 U.S., at 492 [72 S.Ct. at page 384]. To draw from this language the facile generalization that there is no constitutionally protected

The motion to dismiss raises a simply phrased question: Has Dorsey been deprived of a "right" secured by the "Constitution and laws"? The Third Circuit has answered an apparently similar question in the negative:

"It is perfectly plain that the plaintiff's right, if any he has, to be reinstated as a township policeman is derived solely from the law of Pennsylvania. This is not a right secured by the Constitution and laws of the United States within the meaning of Section [1983] of the [U.S.Code]."

Charters v. Shaffer, 3 Cir., 1950, 181 F.2d 764, 765. Whatever "rights" Dorsey may have to be reinstated as a New Iberia policeman derives solely, under the facts alleged in this record, from the law of Louisiana. Their deprivation, therefore, is not the subject of a claim for relief under 42 U.S.C. § 1983. See Snowden v. Hughes, 321 U.S. 1, 11 [64 S.Ct. 397, 88 L.Ed. 497] (1944) * * *.

Any plaintiff who can allege deprivation of a *federal* right by reason of action under color of law can maintain his action under Section 1983. But it is axiomatic that these civil rights statutes of the post-bellum period were not intended to pre-empt state laws in

right to public employment is to obscure the issue. * * * We need not pause to consider whether an abstract right to public employment exists. *It is sufficient to say that constitutional protection does extend to the public servant whose exclusion * * * is patently arbitrary or discriminatory.* (Emphasis added)

11. It is worth noting that the *Charters* trial judge dismissed the complaint *after* a full trial, contrary to the procedure defendants request here. The denial of the present motion should not be construed by either party to indicate that the Court views plaintiffs' claim as meritorious. Plaintiffs must still prove their allegations by a preponderance of the evidence—certainly not an easy task when the allegations are so at odds with the reputation of the defendants' police department.

374

their proper role of vindicating what are essentially state-guaranteed rights. Read against the background of its enactment and the plainly available opportunities under Louisiana law for Dorsey to vindicate his employment "rights," we think that Section 1983 cannot be construed to convert this state cause of action into a federal claim for relief. (emphasis in original, footnotes omitted)

This passage is concluded with footnote 4 at 1024 which states that the vague claims that the procedures in question violated federal due process and equal protection were "without merit" because the Louisiana Constitution plainly authorized the modification of the Board's order and also because Dorsey was still entitled to judicial review under the Constitution of all such orders of the Board. This is the crux of the matter: Dorsey was being dealt with in an even-handed fashion pursuant to state Constitutional provisions which he did not attack as invalid and had not alleged any denial of federal constitutional rights except due process and equal protection claims that were "without merit."

Therefore, under the facts pleaded in this case, *Dorsey* and *Charters* simply don't cover the situation. In the above-quoted language of Judge Ainsworth: "Any plaintiff who can allege deprivation of a *federal* right by reason of action under color of law can maintain his action under Section 1983." *Dorsey*, supra at 1024. Thus, the Court is left with the question of whether plaintiffs have alleged enough to indicate that their claim is one of a denial of federal rights.[12]

The Court starts its analysis of this problem with the Second Circuit's decision in Birnbaum v. Trussell, 371 F.2d

672 (2nd Cir. 1966). Dr. Birnbaum was dismissed from a city hospital and black-balled from others in summary fashion, without notification of charges, a hearing or other protections. Later he found out that the reason for his discharge was union allegations of anti-Negro bias. The Second Circuit determined that in light of the serious damage to the plaintiff's livelihood and reputation that resulted from such action, he was entitled to notice and hearing to defend himself against the allegations under the federal due process clause. After analyzing the previous cases, the Court stated at 678–679:

The principle to be extracted from these cases is that, whenever there is a substantial interest, other than employment by the state, involved in the discharge of a public employee, he can be removed neither on arbitrary grounds nor without a procedure calculated to determine whether legitimate grounds do exist. Most of the cases, of course, involve accusations of disloyalty. However, the principle announced is applicable in this case because the potential injury to the public employee is similar. As in the case of one accused of disloyalty, removal from office under charges of race prejudice permanently brands the person accused as one who is unable to put public and professional duty above personal bias. In this case, it was well calculated to injure appellant's career as a physician both in private and public practice. (footnotes omitted)

The Seventh Circuit endorsed a similar analysis of the standards governing a § 1983 action in Attreau v. Morris, 357 F.2d 871 (7th Cir. 1966). The complaint there alleged radically more damaging facts than those alleged in this case, but *Attreau* opinion indicates that

12. Plaintiffs allege that the interception of telephone conversations violates § 1983, and it may well be that the Court's earlier conclusion that plaintiffs have not stated a claim under Chapter 119 of Title 18 in this regard necessarily means that plaintiffs have not thereby stated a claim under § 1983 in regard to the telephone

conversations. The remainder of this discussion is based on the assumption that the defendants may be able to show that which they state in their brief—that the telephone interceptions were properly and legally carried out under Chapter 119 of Title 18 and the Fourth Amendment.

the denial of a police officer's civil right during the course of an investigation of him for illegal activity, during his administrative trial and prior to the dismissal of criminal charges constitutes a good and sufficient claim under § 1983. Id. at 873.

■ The majority of the cases in this area involve professional persons—doctors, lawyers, teachers, etc.[13]—and the defendants have urged the Court to draw a distinction between those cases preventing someone from practicing a profession and cases such as this involving only the disciplining of policemen. But this approach mistakes the principles involved. Professional men have no more and no more important constitutional rights than working men. The true issue in cases such as *Wieman, Birnbaum* and *Attreau* is not the job or profession in question. Rather, the fundamental similarity in the cases is the public employee's right to pursue his employment without arbitrary vilification and reck-

less injury to his reputation and employability by the state.[14]

■ The charges levelled against plaintiffs were indeed serious and injurious to their reputations. Plaintiffs have alleged not only that there is no evidence to support the charges of which they were convicted, but also that their investigation, interrogation, trial, sentencing and other treatment were conducted in an unconstitutional manner. It may well be that this Court's concept of an "unconstitutional manner" of internal police procedure will differ substantially from that of plaintiffs, but there is nothing in this complaint to persuade the Court that constitutional standards have been rigorously adhered to throughout the incident in question. Defendants will have to produce evidence of such procedures to rebut plaintiffs' allegations,[15] denials of wrongdoing in their brief will not suffice. Attreau v. Morris, 357 F.2d 871, 874 (7th Cir. 1966).

13. See, e. g., Willner v. Committee on Character & Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952).

14. See, e. g., Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 897–898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230 (1961):
[T]he state and federal governments, even in the exercise of their internal operations, do not constitutionally have the complete freedom of action enjoyed by a private employer. But to acknowledge that there exist constitutional restraints upon state and federal governments in dealing with their employees is not to say that all such employees have a constitutional right to notice and a hearing before they can be removed. We may assume that Rachel Brawner could not constitutionally have been excluded from the Gun Factory

if the announced grounds for her exclusion had been patently arbitrary or discriminatory—that she could not have been kept out because she was a Democrat or a Methodist. It does not follow, however, that she was entitled to notice and a hearing when the reason advanced for her exclusion was, as here, entirely rational and in accord with the contract with M & M.
Finally, it is to be noted that this is not a case where government action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity.

15. This is not to suggest, of course, that the defendants bear the burden of proving the legality of their conduct. Rather, plaintiffs have the burden of proving their claim by a preponderance of the evidence. On the other hand, the defendants must answer the complaint and state their view of the facts. If there are no disputed *facts*, the issues might at some earlier point be ripe for decision by way of motion for summary judgment. In the present posture, however, the liberal rule governing the interpretation of complaints requires that the Court take the plaintiffs allegations of illegality at face value if, as here, they are plausible.

Two recent cases by federal courts of appeal amply illustrate what this Court considers to be the proper view of the sufficiency of the instant complaint for a § 1983 action. In Rainey v. Jackson State College, 435 F.2d 1031 (5th Cir. 1970), the plaintiff alleged in his complaint that the defendant state institution had refused to continue his employment as a teacher because he testified for the defense in an obscenity trial. In reversing the district court's dismissal of the § 1983 action for lack of jurisdiction,[16] the Fifth Circuit determined that plaintiff was entitled to a day in court despite the fact that he was non-tenured and that the college alleged that there were a number of good reasons for its refusal to hire him. Id. at 1035. After reprimanding the district court for misreading the complaint in exactly the same fashion the defendants would have the Court read the complaint here, the Court stated at 1035:

> The complaint alleged that the defendants are shutting off from Dr. Rainey an opportunity for employment by the State of Mississippi on constitutionally-impermissible grounds. It follows that the plaintiff stated a cause of action under Title 42, U.S.C. Section 1983, and that jurisdiction was vested in the district court to hear the case.

The critical allegation in *Rainey* was that the state was using constitutionally impermissible criteria in depriving an individual of public employment. Plaintiffs here do not allege that the defendants' actions were taken for unconstitutional reasons or motives, i. e., race, political beliefs, etc. Rather they allege that they were subjected to unconstitutional procedures—although one gathers from their denial that there was evidence to support the charges that the plaintiffs are not admitting the veracity of the charges defendants brought against them.

This procedural aspect of the case, however, makes the second recent case even more pertinent.[17] In Drown v. Portsmouth School Dist., 435 F.2d 1182 (1st Cir. 1970), Circuit Judge Coffin's thoughtful opinion concludes that a non-tenured teacher has a federal due process right to a reasonably detailed statement of the reasons for a school board's decision not to rehire and access to the evaluative reports on which the decision is based. The opinion concludes, however, that due process does not in every teacher termination case demand a full-blown administrative hearing.

*Drown's* conclusions as to the requirements of due process for a decision not to rehire a non-tenured teacher do not apply directly and fully to the very different situation of an administrative decision to investigate, interrogate, try and sentence police officers for a conspiracy to commit something like extortion. See 11 Del.C. §§ 502, 503. The approach that the *Drown* Court took, however, is the approach that this Court believes to be the correct one in analyz-

---

16. There is a close relationship between a decision to dismiss a case such as this for lack of jurisdiction and a decision to dismiss for failure to state a claim because no federal civil rights are alleged to have been violated. This is because 28 U.S.C. § 1343(3), the jurisdictional counterpart of 42 U.S.C. § 1983, also uses the language " * * * any right, privilege or immunity secured by the Constitution of the United States * * *." Although some courts choose to discuss these cases in terms of jurisdiction, e. g. the lower court in. *Rainey*, the Court, considers it the proper approach to assume jurisdiction and decide the question in terms of success or failure in stating a claim. See Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

17. The *Drown* Court stated at 435 F.2d 1183:

> But appellant makes no claim of any violation of her collateral constitutional rights; she merely says that the process by which the decision not to rehire her was made does not comport with the fundamental fairness guaranteed her by the Fourteenth Amendment.

ing the constitutional claims of an individual involved in an administrative situation. The Court stated at 1183–1184:

> Courts are divided on the issue of the administrative procedural rights to which a non-tenured public school teacher is entitled when he is not rehired. Some say that the teacher has no right to an administrative hearing, although he does have a legal remedy, if he was dismissed for constitutionally impermissible reasons such as his race or the exercise of First Amendments rights. * * * Others have held that a non-tenured teacher is entitled to a hearing even when there is no allegation that the decision not to rehire was made for constitutionally impermissible reasons. * * * Still others have taken a middle course, requiring administrative hearings only when there is an allegation that a constitutionally impermissible reason motivated the decision not to rehire. * * * We are faced with this precise question for the first time.
>
> To determine what, if any, procedures are required when a school board decides not to rehire a non-tenured teacher, we are required to balance the competing interests of the individual teacher and of the school board. Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886 [81 S.Ct. 1743, 6 L.Ed.2d 1230] (1961); cf. Goldberg v. Kelly, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed. 2d 287] (1970); Van Alstyne, The Constitutional Rights of Teachers and Professors, 1970 Duke L.J. 841 (1970). (footnotes omitted)

As the last-quoted sentence indicates, the Court must have before it evidence and the arguments of counsel as to what procedures and protections are required in this particular situation involving police department procedures and individuals accused of scandalous conduct. The determination of whether due process of law or other rights have been violated can then be judged by familiar standards:

> Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to the disqualification for unemployment compensation, Sherbert v. Verner, 374 U. S. 398, [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963); or to denial of a tax exemption, Speiser v. Randall, 357 U.S. 513 [78 S.Ct. 1332, 2 L.Ed.2d 1460] (1958); or to discharge from public employment, Slochower v. Board of Higher Education, 350 U.S. 551 [76 S.Ct. 637, 100 L.Ed. 692] (1956). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, [71 S.Ct. 624, 95 L.Ed. 817] (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895 [81 S.Ct. 1743, 6 L.Ed.2d 1230] (1961), "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." See also Hannah v. Larche, 363 U.S. 420, 440 [80 S.Ct. 1502, 4 L.Ed.2d 1307] (1960). [Goldberg v. Kelly, 397 U.S. 254, 262–263, 90 S.Ct. 1011, 1017–1018, 25 L.Ed.2d 287 (1970)].

Defendants argue that because the police department is a military type organization, see Cafeteria & Restaurant Workers Union v. McElroy, supra, plaintiffs have no claim that their civil rights were deprived them by reason of any procedures used—without even stating of record what those procedures were! Due process of law is not a fixed concept

**378**

requiring the same procedures and protections ineluctably in every conceivable situation in which the state and the individual come into conflict. Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 894–895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Still less does it mean that a police department is not permitted to discipline employees who violate duly adopted rules of conduct. It does mean however, that in discovering and punishing wrongdoing in its own house, a police department cannot ride roughshod over those individual liberties that it must take pains to preserve when dealing with the community. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). A policeman is not required to shed his civil rights when he dons the blue uniform.

■ If the complaint is taken as fact as the Court does at this stage of the proceedings, one can say that plaintiffs have been unjustly accused of what is apparently criminal conduct,[18] subjected to interrogation without counsel, required to waive their right to silence, and tried before an illegally constituted court that heard no real evidence against them and violated all procedural norms and then punished plaintiffs for misdeeds that they did not commit. There would, it seems, be little left of § 1983 if these allegations were insufficient to state a claim under it for relief.

One is entitled to view these allegations with a measure of skepticism, and plaintiffs will be required to prove these or similar facts in order to recover. In this opinion, the Court decides only that the allegations of the complaint state a claim upon which relief can be granted.

Therefore, defendants' motion to dismiss for failure to state a claim upon which relief can be granted will be denied.

Submit order in accordance herewith.