Patrica DROWN, Plaintiff, Appellant,

v.

PORTSMOUTH SCHOOL DISTRICT
et al., Defendants, Appellees.

No. 7667.

United States Court of Appeals,
First Circuit.

Dec. 18, 1970.

Jack B. Middleton, Manchester, N. H., with whom Peter B. Rotch and McLane, Carleton, Graf, Greene & Brown, Manchester, N. H., were on the brief, for appellant.

John C. Driscoll, Portsmouth, N. H., for appellees.

Bradley F. Kidder and Nighswander, Lord, Martin & KillKelley, Laconia, N. H., on the brief for The New Hampshire School Boards Ass'n, amicus curiae.

David Rubin, Richard J. Medalie, Alvin Friedman, and Epstein, Friedman & Duncan, Washington, D. C., on brief for The National Education Ass'n, amicus curiae.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellant, a public school teacher, brings this action pursuant to 42 U.S.C. § 1983 against the Portsmouth School District, the administrator, and the school board members of the district. She claims that appellee's failure to offer her a teaching contract for the 1970–71 school year deprived her of rights guaranteed to her by the Constitution.

Appellant was employed as a non-tenured teacher for the 1968–69 and 1969–70 school years. For each year, she was employed under a standard one-year contract. Under New Hampshire law and pursuant to appellant's one-year contract, a non-tenured teacher may not be dismissed without cause and without being afforded certain procedural rights *during* the school year, and tenured teachers are entitled to similar safeguards if they are not rehired. N.H. Rev.Stat.Ann. ch. 189, § 13. But a failure to rehire a non-tenured teacher affords the teacher no rights other than to notification by March 15 of the school year. N.H.Rev.Stat.Ann. ch. 189, § 14–a.

Appellant was given timely notice that she would not be rehired for the 1970–1971 school year. She. sought and was denied a list of reasons for this decision and a hearing so that she might have an opportunity to challenge it.. Her complaint, which was dismissed below as failing to state a cause of action, claims that she was not afforded due process by the school district. She argues that she was denied certain rights, principally that of a hearing when the school district decided not to rehire her.[1]

 Appellant's contract with appellees implies that the school district has virtually unlimited discretion to rehire her or not. See Note, Developments in the Law—Academic Freedom, 81 Harv. L.Rev. 1045, 1099–1100 (1968). Nevertheless, there is no doubt that appellant has an interest in being rehired sufficient to prevent the school district from not doing so for constitutionally impermissible reasons. Slochower v. Board of

Higher Education of New York City, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Johnson v. Branch, 364 F.2d 177 (4th Cir., en banc, 1966), cert. denied, 385 U.S. 1003, 87 S.Ct. 706, 17 L. Ed.2d 542 (1967); Albaum v. Carey, 283 F.Supp. 3 (E.D.N.Y.1968). *See generally*, Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439, 1445–1458 (1968); Davis, The Requirement of a Trial-Type Hearing, 70 Harv.L.Rev. 193, 233–243 (1956). But appellant makes no claim of any violation of her collateral constitutional rights; she merely says that the process by which the decision not to rehire her was made does not comport with the fundamental fairness guaranteed her by the Fourteenth Amendment.

Courts are divided on the issue of the administrative procedural rights to which a non-tenured public school teacher is entitled when he is not rehired. Some say that the teacher has no right to an administrative hearing, although he does have a legal remedy, if he was dismissed for constitutionally impermissible reasons such as his race or the exercise of First Amendment rights. Freeman v. Gould Special School District of Lincoln County, Arkansas, 405 F.2d 1153 (8th Cir. 1969), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969).[2] Others have held that a non-tenured teacher is entitled to a hearing even when there is no allegation that the decision not to rehire was made for constitutionally impermissible reasons. Orr v. Trinter, 318 F.Supp. 1041 (S.D.Ohio, 1970); Roth v. Board of Regents, 310 F.Supp 972 (W.D.Wisc.1970); Gouge v.

---

1. Along with the right to a hearing, appellant and the National Educational Association as Amicus Curiae, ask this court to detail other safeguards to which appellant is entitled, including (1) the right to cross-examine witnesses; (2) the right to present both oral and written arguments; (3) the right to retain counsel; (4) the right to a determination based solely on legal rules and the evidence adduced at the hearing; (5) the right to statement by the decision-maker

of his reasons and of the evidence relied on; (6) the right to an impartial decision-maker other than the school board; (7) the right to a hearing on the record so that a verbatim transcript can be made; and (8) the right to be advised ·of these rights. Presumably, they would also include the right to judicial review.

2. For a critical analysis of this opinion, see Note, 44 N.Y.U.L.Rev. 836 (1969).

Joint School District No. 1, 310 F.Supp. 984 (W.D.Wisc.1970). Still others have taken a middle course, requiring administrative hearings only when there is an allegation that a constitutionally impermissible reason motivated the decision not to rehire. Ferguson v. Thomas, 430 F.2d 852 (5th Cir., 1970); Sindermann v. Perry, 430 F.2d 939 (5th Cir., 1970).[3] We are faced with this precise question for the first time.[4]

To determine what, if any, procedures are required when a school board decides not to rehire a non-tenured teacher, we are required to balance the competing interests of the individual teacher and of the school board. Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); cf. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Van Alstyne, The Constitutional Rights of Teachers and Professors, 1970 Duke L.J. 841 (1970). The school board is interested primarily in its ability to insure the quality of the school system by employing teachers for a probationary period. During this period, the board attempts to evaluate teaching ability to determine if the teacher merits tenure. Such evaluations require judgments about many subjective factors which are difficult to document with precision, such as the ability of the teacher to inspire students, his mastery of and progress in his subject, and his capacity to work effectively with colleagues, supervisors, and parents.

The teacher, particularly one at the outset of his career, is in the position of having invested in preparation for a career which depends mainly on the willingness of public bodies to employ him. Such willingness, as the complaint alleges, is seriously dissipated if not destroyed when an early employer refuses to rehire the teacher. In the present case the plaintiff, after four years of apparently satisfactory performance in Illinois and New Hampshire, confronts a decision not to rehire her without any reason given. This effectively forecloses her from attempting any self improvement, from correcting any false rumors and explaining any false impressions, from exposing any retributive effort infringing on her academic freedom, and from minimizing or otherwise overcoming the reason in her discussions with a potential future employer.

Against this background of competing interests, we assess the benefits and burdens of the rights claimed by appellant. We first examine the effect on both the teacher and the school authorities of a right to receive a detailed statement of reasons for non-retention, accompanied by access to any teaching evaluation reports.[5] From the point of view of the teacher, such notice would give him the opportunity informally to

---

3. The Fifth Circuit distinguishes between non-tenured teachers who have an expectancy of reemployment and those who do not. Those with an expectancy of reemployment are entitled to the full procedural rights of a teacher with tenure. We are not impressed by this distinction. Almost every teacher, arguably at least, has such an expectancy, and we think a teacher has an interest in employment protected by the due process clause independent of the existence of this quasi-contractual right. Cf. Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966).

4. We have, however, decided an analogous case. In Medoff v. Freeman, 362 F.2d 472 (1st Cir. 1966), we held no hearing was required to guarantee due process to a dismissed probationary government employee who had been informed of the reasons for his dismissal.

5. See Frakt, Non-Tenure Teachers and the Constitution, 18 U.Kan.L.Rev. 27, 50–53 (1969).

Access to reports would seem to be a logical consequence of any right to receive a statement of reasons. To the extent that they are consistent with and foreshadow the reasons for non-retention, they both corroborate and give some depth to those reasons. To the extent that, as in the instant case, prior reports do not foreshadow dissatisfaction on the part of the teacher's superiors, the right to access would tend to restrain a board from assigning capricious reasons for its present dissatisfaction.

correct a decision made on the basis of mistaken or false facts. Moreover, he might find that he had evidence that could be used to support a claim that he was not rehired for constitutionally impermissible reasons. Even if the reasons assigned were false ones, demonstrating their falsity would have probative value in a claim that the real reasons lie elsewhere. Additionally, the teacher would have the extra benefit of knowing where his performance failed to live up to expectations—a benefit that may not be constitutionally required but which is surely desirable. Finally, if the reason were to lie in a judgment that the teacher was too innovative and unconventional, this very fact might be turned into a recommendation in the eyes of another possible employer.

From the viewpoint of the school board, a requirement that it state its reasons for not rehiring a non-tenured teacher would impose no significant administrative burden. Nor would it significantly inhibit the board in ridding itself of incompetent teachers. The workability of such a requirement is evident from the fact that several states presently require their school boards to do so. *E.g.,* Wash.Rev.Code Ann. § 28.67.070 (1964).[6] As to access to administrative evaluations, we would assume that, since part of their objective is to help the teacher improve, their content is made known to the teacher as a matter of policy.[7] Access as of right has been granted in a number of states. *E.g.,* Conn. Gen.Stat.Ann. § 10–151(a) (Supp. 1967). Finally, while access by a teacher to an administrator's frank appraisal of his ability might lead to embarrassment and friction if the teacher-administrator relationship were to continue, such a consideration is moot when the teacher has not been rehired.

The relationship could be further impaired only in the unlikely case that the decision not to rehire were reversed despite negative reports; and in such a case, the avoidance of an unjustified non-retention must outweigh the danger of disharmony.

We therefore hold that the interests of the non-tenured teacher in knowing the basis for his non-retention are so substantial and that the inconvenience and disadvantages for a school board of supplying this information are so slight as to require a written explanation, in some detail, of the reasons for non-retention, together with access to evaluation reports in the teacher's personnel file.[8]

Appellant, however, argues further that the right to a statement of the reasons for not being rehired is meaningless unless the school board can be forced to prove those reasons at a hearing. As an initial response, we note that a hearing is not constitutionally compelled in all cases where individual rights may be impaired.

"The Fifth Amendment does not require a trial-type hearing in every conceivable case of government impairment of private interest. \* \* \* The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, *supra* 367 U.S. at 894–895, 81 S.Ct. at 1748.

It is obvious that the kind of hearing sought by appellant, *see* note 1, *supra,* would involve the full trappings of counsel, cross-examination, rules of evidence, a verbatim record, and a decider other than the school board. Not only would the invoking of such adjudicative appa-

---

6. Alaska entitles a non-tenured teacher to a statement of reasons and a complete bill of particulars. Alaska Stat. § 14.20.-180(a) (1962). Further discussions of varying state procedures can be found in Frakt, *supra* at 28–30; and Developments in the Law—Academic Freedom, *supra* at 1091–1092.

7. In fact, appellant in this case has received some such reports, possibly all that exist.

8. A similar result, in a different employment situation, was reached in Olson v. Regents of University of Minnesota, 301 F.Supp. 1356 (D.Minn.1969).

ratus be an added, expensive and unfamiliar obligation for the school district, but the very existence of the right of a non-tenured teacher to such a hearing would have two side effects, equally unfortunate. In the first place, administrators would be less likely to recommend that teachers not be rehired if they knew that such a decision might require them to go through the time, expense, and often the personal discomfort of a full scale hearing. In such circumstances, the school board is more likely to tolerate incompetent teachers. At the same time, administrators would, to avoid these difficulties in the future, follow a counsel of over-caution in their hiring practices. The innovative teacher would have a more difficult time finding employment if school districts fear they cannot afford to take a chance on him. And the schools would be left with a teaching force of homogenized mediocrities.

Such risks and burdens for the school board might be tolerable if the right to a hearing gave promise of high and unique usefulness in safeguarding the protectible interests of the non-tenured teacher. We therefore inquire as to the nature of these interests and the extent to which they would be served by a hearing.[9]

One interest might well be the opportunity for a probationary teacher in the system to explain his teaching philosophy and methods, which may be at odds with those of his supervisor. But in the light of the school board's wide discretion, and its prerogative to be short-sighted and narrowminded, a hearing would not be likely to settle the clash of the value judgments any more effectively than informal discussions—assuming, of course, that the teacher is aware of the objections, as he would be if detailed notice is given. A second interest may lie in identifying factually incorrect reasons for non-retention. Once again, if the teacher is made aware of the reasons, and if the school board is acting in good faith, the machinery of a hearing would not appear to be necessary to clear up the misunderstanding.

There remain the teacher's interest in protecting his constitutional rights, such as free speech, and in protecting himself against a decision made in bad faith. It is not easy for us to believe that a significant number of decisions not to rehire non-tenured teachers rest on either ground. In any case, the teacher asserting a constitutional right has guaranteed access to the federal courts. While an administrative hearing may help the teacher by way of flushing up constitutionally impermissible reasons, the chief beneficiaries are the school board itself, which can only profit from reviewing a decision before being subject to possible liability, and the courts, which do not seek unnecessary litigation.[10] From the teacher's point of view, there is little reason for him to prefer the prospect of two full scale constitutional presentations where one could suffice. As to the teacher's interest in guarding against bad faith decisions, we first observe that, as we have noted, the requirement that detailed reasons be assigned is some

9. We note, preliminarily, that in any such hearing the burden of persuasion, because of the subjective factors on which a school board may legitimately base its decision on rehiring, would rest on the teacher. For example, testimony concerning a teacher's failure to communicate enthusiasm to his students would have to be conclusory in nature—"He was, or was not inspiring". Even were we to require that appellant be given an administrative hearing, we think that she would have to bear the burden of persuading the decision-maker that the de-

cision not to rehire her was an incorrect one; our research reveals no authorities who argue that the school board should bear the burden of proving its decision correct. See, e. g., Developments in the Law—Academic Freedom, supra at 1092; Note, 44 N.Y.U.L.Rev. 836, 842–843 (1969).

10. We therefore normally require resort to an available administrative hearing prior to initiation of a section 1983 action. See Dunham v. Crosby, 435 F.2d 1177, n. 2 (1st Cir., decided this date).

hindrance to a board so motivated. Secondly, bad faith may rise to a constitutional level, in which case the federal courts are available, or, if not of this magnitude, it may be subject to a state court remedy in tort. *See* W. Prosser, Handbook of the Law of Torts, § 126, at 1015–1016 (3d ed. 1964). Moreover, an absolute safeguard against the possibility of covert bad faith would involve school boards delegating crucial rehiring decisions to third parties—a resolution which would spawn a host of other problems not the least of which would be the erosion of the educational policy function of school boards. On balance, we conclude that the residual possibility of decisions made in bad faith concerning non-tenured teachers does not justify the judicial imposition on the public school systems of the nation of adjudicative hearing procedures.[11]

We recognize that there may, under our solution, be rare instances where an improperly dismissed teacher would not be adequately protected. We wish to stress, however, that our decision here is limited to the case of a non-tenured teacher whose contract is not renewed during a probationary period. Non-tenured teachers are made aware that they have no right to reemployment by their employment contracts which run for only one year and which entitle them to a hearing only if they are dismissed during the course of the year.[12] While it is true that the effect of a decision not to rehire may be the same as dismissal, the teachers have made a contract which entitles them to procedural rights only when they are dismissed. Teachers are not powerless to change the terms of their contracts; the procedural rights of non-tenured teachers who are not rehired vary widely from state to state. *See* Developments in the Law—Academic Freedom, *supra* at 1091–1092. Non-tenured teachers who do not like the terms of New Hampshire's contracts can either bargain to change them [13] or can seek employment in states where the terms are different. Thus, in balancing the interests of the school board and the teacher, we must remember that the teachers have agreed to the procedural scheme and that teachers are not power-

---

11. In Roth v. Board of Regents, *supra*, cited with approval by appellant, the court stated "[I]t is reasonable that there be available a very wide spectrum of reasons, some subtle and difficult to articulate and to demonstrate, for deciding not to retain a newcomer * * *." 310 F.Supp. at 978. We find it difficult to believe that the scrutiny by either an administrative or a judicial hearing of a decision made on such nebulous but admittedly valid grounds would afford a teacher meaningful protection from arbitrary decisions.

Similarly, we think a requirement that a teacher be afforded an administrative hearing if he makes a constitutional claim or a claim of an actionable wrong, *see* Sindermann v. Perry, *supra*, offers the teacher little more protection than the status quo. Presently, the teacher can make such a claim in the courts, a forum undoubtedly more suited to evaluating them.

12. Although the requirement that non-tenured teachers be notified by March 15 if they are not to be reemployed may be interpreted as giving the teacher a right to a continuing contract unless notified, the primary right is to notice, not to continued employment. Without a fixed date by which notice must be given, New Hampshire teachers might not have time to search for another job if they were not rehired. To compel school districts to notify teachers in time, the districts are required to offer a contract if they fail to give timely notice. Thus, while non-tenured teachers have a right to notice, they have no right to be rehired except to enforce the notice requirements.

13. Since the provisions of New Hampshire's contracts are determined by law, this is not a normal collective bargaining situation, but to say that teachers cannot bargain to alter laws that affect the terms and conditions of their employment would require the court to shut its eyes to what has happened in the past few years in bargaining between public employees and their employers. *See generally*, Wellington & Winter, The Limits of Collective Bargaining in Public Employment. 78 Yale L.J. 1107 (1969).

less to alter the scheme or find employment under a different scheme.

 Under the circumstances, we hold that a hearing is not required and that the interests of society, in promoting a better school system, and in protecting the rights of the individual, are best served by the solution we put forth. Since, however, this solution is novel, the defendant cannot in fairness be subjected to the sanctions which ordinarily accompany the violation of pre-existing law. *Cf.* Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). We apply the rule developed in this opinion to the appellant, in the event that the court finds that no such reasons have been given, by assuring her of a forthcoming communication of the reasons for her non-retention. We will apply the rule in the future only to those cases where a decision not to rehire is made subsequent to the date of this opinion. It also follows that appellant's claim for damages must be denied.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.