**Jeffrey HARRINGTON, Plaintiff,**

v.

**James TAFT, Defendant.**

**Civ. A. No. 4754.**

United States District Court,
D. Rhode Island.

March 3, 1972.

David F. Sweeney, Jr., Warwick, R. I., for plaintiff.

Peter Palombo, Jr., City Sol., City of Cranston, Providence, R. I., for defendant.

## OPINION AND ORDER

PETTINE, Chief Judge.

On October 26, 1970, plaintiff Jeffrey Harrington was appointed a patrolman in the Police Department of the City of Cranston. Under the Cranston city charter, "original appointments" are made for a "probationary period" not to exceed one year. On October 21, 1971, toward the end of a year of service, plaintiff received a letter from the defendant James Taft, mayor of Cranston, informing him that he would not be appointed a permanent member of the Cranston police force, for the reason that he was "not suited for police work." Plaintiff was discharged from his employment the following day. At no time was plaintiff served with any charges or provided a detailed listing of the reasons for his termination, nor was he given any opportunity to oppose his dismissal at a hearing or other administrative proceeding.

Plaintiff brought this action under 42 U.S.C.A. § 1983,[1] asking that the Court order him reinstated to the Cranston po-

---

1. 42 U.S.C.A. § 1983 reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects,

lice force until such time as he is served with charges or reasons for dismissal, and is provided a hearing at which to defend himself against any charges.[2] The jurisdiction of this court to sit in a § 1983 action is established by 28 U.S.C. § 1343.[3]

Section 1983 invests the federal courts with the power to enforce the provisions of the Fourteenth Amendment of the Constitution of the United States against "those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). In the instant case, the plaintiff charges that the manner in which he was deprived of continued employment with the Cranston Police Department constituted a violation of the Fourteenth Amendment, specifically the clause which provides that no State shall "deprive any person of life, liberty, or property without due process of law." "And it is well settled that municipal ordinances and the actions in office of municipal officials constitute state action and are within the prohibition of the Fourteenth Amendment. Yick Wo v. Hopkins, 1886, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Lovell v. Griffin, 1938, 303 U.S. 444, 450, 58 S.Ct. 666, 82 L.Ed. 949." McCoy v. Providence Journal Co. (1st Cir. 1951), 190 F.2d 760, 764, cert. denied 342 U.S. 894, 72 S.Ct. 200, 96 L.Ed. 669 (1951). Claims of denial of procedural due process arising out of dismissal from public employment are routinely accepted by federal courts as being within the contemplation of § 1983. See Drown v. Portsmouth School District, 435 F.2d 1182 (1st Cir. 1970) (*Drown I*). There is no question but that plaintiff's claim, as stated in his complaint, brings him properly before this court.

Plaintiff contends that the Court, in assessing the constitutionality of his dismissal, can recognize no distinction between plaintiff and a non-probationary or "permanent" police officer, as the creation of the classification of "probationary" policemen is not specifically authorized by Rhode Island law, and is therefore illegal as a matter of state law. The Court finds no merit in this position. The Cranston city charter, which provides that all city appointments shall be subject to a period of probation, was adopted by the City pursuant to the authority granted by Amendment 28, Constitution of Rhode Island, entitled "Home Rule For Cities and Towns." Section 2 of Amendment 28 gives every city and town in Rhode Island the power to adopt a charter at any time; this is authorization specific enough to "legitimize" any of the provisions of the Cranston charter, and this court will not disallow any such provision merely because there is no other specific statutory authority for it.[4]

---

or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Counsel for plaintiff and defendant have waived a hearing on the merits, and have asked the Court to decide the issues presented by this case on the complaint, answer, and memoranda submitted by counsel.

3. 28 U.S.C. § 1343 provides in part: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; . . . "

4. The Court's ruling would be different if it could be shown that the creation of a "probationary" classification established a *conflict* with one of the General Laws of the state, but no such showing has been made. A search of the Rhode Island state statutes reveal no provision tending to define, limit, or otherwise prescribe the allowable categorizations of

The dismissal of plaintiff pursuant to procedures authorized by the Cranston city charter must be deemed facially legal under Rhode Island state law, constitutional questions aside. In other words, the question before the court is, "Can a *probationary* policeman be dismissed without a hearing or specification of the grounds for dismissal?", not merely "Can a policeman be so dismissed?" The court simply recognizes that Cranston was not barred by any provision of state law from classifying its new employees as "probationary" during their first year of employment.

■ There is no doubt that plaintiff has an interest in being rehired sufficient to prevent the City of Cranston from discharging him *for constitutionally impermissible reasons.* Slochower v. Board of Higher Education of New York City, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Johnson v. Branch, 364 F.2d 177 (4th Cir., 1966), cert. denied 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967); Albaum v. Carey, 283 F.Supp. 3 (E.D.N.Y.1968). Plaintiff's only complaint, however, is with the *procedure* under which he was dismissed, and he has offered no proof of the reasons for the dismissal.

The *Drown I* case, supra, involved the somewhat similar situation of a non-tenured public school teacher whose contract was not renewed and whose sole claim was that the process by which the decision not to rehire her was made did not comport with the fundamental fairness guaranteed her by the Fourteenth Amendment. The First Circuit Court of Appeals, never before having confronted the issue of the administrative procedural rights to which a non-tenured public school teacher is entitled when not rehired, first took notice of the divergence of opinion in other jurisdictions, and then announced, 435 F.2d at 1184, that "[t]o determine what, if any, procedures

are required when a school board decides not to rehire a non-tenured teacher, we are required to balance the competing interests of the individual and of the school board. Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *cf.* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970) . . . ." The Court finds that a similar weighing of interests is called for in the instant case, the plaintiff and the City of Cranston—specifically, the Police Department—being the parties whose competing interests must be balanced.

Section 14.07 of the Cranston city charter provides in part:

"All original appointments shall be made for a probationary period the conditions of which shall be determined by the rules and regulations of the department, provided that no probationary period shall exceed one year."

Among the regulations pertaining to the probationary period is the following one, entitled "Objective":

"The probationary or working test shall be regarded as an integral part of the examination process and shall be utilized by supervisors and department heads for closely observing the employee's work, for securing the most effective adjustment of a new employee to his position, and for rejecting any employee whose performance does not meet the required work standards."

Defendant argues that this regulation, apparently applicable to all departments of Cranston city government, is especially vital to the workings of the Police Department. Defendant contends that because "[t]he policeman occupies a sensitive position in the law enforcement process . . . [t]he appointing authority must be free to eliminate those

---

municipal employees. The only definitions of such terms as "policemen" are to be found in special purpose statutes, such as the Policemen's Arbitration Act, G.L. Chapter 28–9.2. These definitions, in

each case, serve to establish the coverage of a particular Act, and do not in any way restrict classification of policemen for unrelated purposes.

candidates for appointment who have not met the standards during the probationary period." The Police Department appears to be primarily interested in its ability to insure the quality of the police force by employing members for a probationary period. During the probationary period the department makes judgments about various factors which are relevant to the decision whether to employ a policeman permanently, but not susceptible of complete evaluation prior to the initial hiring.

The plaintiff, on the other hand, is in the position of having invested a substantial amount of time in the commencement of a career which depends on the willingness of a municipal government to employ him. After a year of apparently satisfactory performance on the Cranston police force, he has been informed that he will not be rehired, but has been offered no detailed explanation of the reasons for the decision. Without the benefit of the knowledge of such reasons, he has no opportunity to attempt self-improvement, vindicate false charges, explain false rumors, or correct mistaken impressions. Furthermore, he will be unable to minimize or otherwise overcome the reasons for the dismissal in his discussions with future employers. See *Drown I*, supra, 435 F.2d at 1184.

Against this background of competing interests, the court will assess the benefits and burdens of the procedural rights claimed by the plaintiff, to wit, the right to be presented with charges or reasons for dismissal, and the right to a hearing at which to defend himself against such charges. *Drown I*, supra, at 1184.

Turning first to the effect of a requirement that a detailed statement of the reasons for non-retention be rendered, and that access to any pertinent administrative evaluations of plaintiff's work be granted,[5] the court observes that such a statement and such access could be of substantial benefit to the plaintiff. It would give him the opportunity to correct a decision based on mistaken or false factual premises. It might bring to light evidence upon which he could base a federal claim that he had been deprived of his employment for constitutionally impermissible reasons, or it might provide him with a factual basis for the filing of a petition for relief in the Superior Court of Rhode Island.[6] Finally, it would give him a chance to be judged on the merits of his own record, rather than on the conclusions of decision-makers in the Cranston Police Department, in his dealings with future employers.

As for the Police Department, a requirement that it state with specificity its reasons for not rehiring the plaintiff would impose no great administrative burden. Nor would it operate as a significant obstacle to the dismissal of unqualified probationary patrolmen. The court sees no threat to department security arising out of the granting of access to administrative evaluations, and it can imagine no other objection compelling enough to outweigh plaintiff's interest in having such access.

■ Accordingly, the court finds that the plaintiff's interests in knowing the precise reasons for his dismissal outweigh the inconveniences and other disadvantages to the government of the City of Cranston in communicating those reasons to the plaintiff. The court orders that the defendant, within ten days of the date of this order, furnish the plaintiff with a written, detailed statement of the reasons for the

5. Access to such reports is a logical consequence of the right to receive a statement of reasons. For further discussion, see *Drown I*, supra, 435 F.2d at 1184, n. 5.

6. Section 45–20–1.1 of the General Laws of Rhode Island, entitled "Petition for judicial review of disciplining or removal of policemen," permits a dismissed policeman to appeal such dismissal to the state Superior Court when it was based upon "charges involving moral turpitude or violation of departmental regulations . . . ." The petitioning policeman is entitled to a trial de novo before a justice of the Superior Court without a jury.

discontinuation of his employment, and that the plaintiff be granted, upon request, access to any and all administrative reports in which plaintiff's performance as a policeman was evaluated. I note that implicit in this requirement that a statement of reasons be afforded is the fundamental requirement of procedural due process that such reasons may not be "arbitrary and capricious." Drown v. Portsmouth School District, 451 F.2d 1106 (1st Cir. Dec. 1, 1971) (*Drown II*).

Plaintiff also claims the right to a hearing at which to attack the reasons for his dismissal and defend himself against any charges. In the *Drown I* case, supra, the First Circuit held that a hearing need not accompany the termination of a non-tenured teacher, notwithstanding the requirement that a detailed statement of the reasons for non-renewal be given. The basic considerations relevant to the court's decision are of application here, and can be translated into generalizations regarding probationary employees, although the *Drown I* opinion is directed in its language toward non-tenured teachers:

—A hearing is not constitutionally compelled in all cases where individual rights may be impaired. Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, supra.

—The burdens attaching to a requirement that probationary employees be granted a "full-scale" hearing prior to non-renewal include considerable expense and inconvenience as well as an inhibiting effect on the original hiring process.

—The benefits to the probationary employee from such a hearing do not outweigh the above burdens, as all important rights of the employee can be protected by resort to other forums. Specifically, an employee asserting a constitutional claim is always guaranteed access to the federal courts. Good faith mistakes of fact leading to a dismissal can be corrected without a hearing. Bad faith dismissals are often subject to remedies in state courts.[7]

—There may be rare instances in which the denial of a hearing leaves an improperly dismissed employee inadequately protected, notwithstanding the above remedies. The possibility of such occurrences is not enough to justify a general compulsion that hearings be held in all cases, especially given the fact that probationary employees are hired with the specific understanding that employment may terminate at the end of the probationary period.

*Drown I*, 435 F.2d 1185–1187. See also Medoff v. Freeman (1st Cir. 1966), 362 F.2d 472, which held that no hearing was required to guarantee due process to a dismissed probationary government employee who had been informed of the reasons for his dismissal.

■ In keeping with the case law of this jurisdiction and the requirements of due process as this court perceives them, the court hereby denies plaintiff's request for an order compelling the defendant to grant him a hearing.

■ Plaintiff asks additionally that the court order him reinstated to the Cranston police force until such time as any other order of this court is complied with. The court does not feel that reinstatement is called for at this time. Any harm done to the plaintiff by keeping him off the police force at the present time can be cured by a reinstatement with back pay in the event that it is ultimately determined that his dismissal was improper. The request for an order of reinstatement is denied.

7. For an example of a state remedy potentially available to the instant plaintiff, see note 2, supra.