William C. **SPRINGSTON**, Plaintiff,

v.

Wayne **KING** et al., Defendants.

Civ. A. No. 71–C–125–R(H).

United States District Court,
W. D. Virginia,
Harrisonburg Division.

March 24, 1972.

Philip J. Hirschkop and David Ross Rosenfeld, Hirschkop and Rosenfeld, Alexandria, Va., for plaintiff.

W. W. Wharton and Phillip C. Stone, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for defendants.

## OPINION AND JUDGMENT

DALTON, District Judge.

This complaint was filed by William C. Springston, formerly the guidance counselor at Thomas Harrison Junior High School, against Wayne King, superintendent of Harrisonburg City Schools, J. G. Myers, principal of Thomas Harrison Junior High School, and six members of the Harrisonburg School Board. All defendants were sued in their individual and official capacities. Jurisdiction for this action is founded under 28 U.S.C.A. § 1343 which is the implementing statute for 42 U.S.C.A. § 1983.

The plaintiff served as guidance counselor at Thomas Harrison from September 1967 through June 1971. During the course of his employment, he instituted a policy assuring students of the confidential nature of their conferences with him. There is no doubt that the principal and other supervisors had been satisfied with his services for a majority of this period.[1] It is also true

that prior to January 30, 1971 the plaintiff had received no reprimands or critical evaluations from his superiors. However, on January 30, 1971, the plaintiff received from defendant Myers an evaluation in which he was criticized for some of his methods. Thereafter on February 26, 1971, Mr. Springston received a memorandum from Mr. Myers wherein the plaintiff was advised of Mr. Myers' intention to recommend that he not be rehired as guidance counselor for the 1971–72 academic session. This memorandum gave reasons in support of Mr. Myers' recommendation which can be summarized as follows: (1) that many of Mr. Springston's actions were considered counter-productive, (2) that Mr. Springston had lost his effectiveness as a guidance counselor and that many teachers had lost confidence in his ability to objectively counsel students, (3) that because of Mr. Springston's policy of confidentiality, difficulties had arisen due to the fact that teachers were unaware that student's problems existed, (4) that because Mr. Springston did not keep teachers informed, a communication problem existed; and (5) that Mr. Springston had revealed privileged information to persons not connected with the school, and that he was sometimes critical of teachers in conferences with parents.

Upon receiving notice of this recommendation, Mr. Springston requested an appearance before the school board, and he further requested that he be permitted to discuss both the negative evaluations and the recommendation of non-retention as guidance counselor. Moreover, the plaintiff requested a full hearing with an opportunity to examine and cross-examine the evidence upon which the defendants had relied.

On March 16, 1971, the plaintiff appeared before the school board; however, the information which he had requested as to the specifics underlying

---

1. In a letter to parents of prospective students at Thomas Harrison Junior High School, Mr. Myers had stated; "One of

our most effective services has been the guidance counseling provided by Mr. William Springston."

his evaluation were not supplied, and he was allegedly not allowed to present evidence in his behalf. The board allegedly stated at that time that they were concerned over the plaintiff's policy of student confidentiality. The day following this meeting, Superintendent King sent a letter to Mr. Springston informing him that the school board had adopted the recommendation of Mr. Myers. That recommendation was that Mr. Springston not be employed as guidance counselor for the academic session of 1971–72, but that he be offered a position as an Industrial Arts or Distributive Education teacher. This letter further informed the plaintiff that he could appeal the board's action. This letter concluded with the superintendent stating, "since this action involves only a change of assignment, my interpretation of the action is that you are being offered a contract next year as a teacher. I need to know your reaction to this."

Mr. Springston allegedly made other attempts to obtain more detailed information on the evaluation, but was unsuccessful; therefore, he requested an appeal hearing before the board at which he wanted an opportunity to examine the defendants' evidence. This hearing was held on July 6, 1971, and the plaintiff with the aid of counsel, again requested the detailed information. The board did not open the initial recommendations nor did it have any teachers present to support its decision. However, the plaintiff apparently was allowed to present testimony of persons who he thought would support his cause. The board notified Mr. Springston on July 9, 1971 that it had found no new evidence on which to render any new decision.

The plaintiff alleges that the actions of the defendants in failing to reemploy him as guidance counselor were based on the plaintiff's exercise of his constitutionally protected freedoms including his right to free speech under the First Amendment. Furthermore, the plaintiff alleges that the procedure followed by the defendants in handling Mr. Spring-

ston's case violated his constitutional right to procedural due process in that the defendants' failure to divulge the sources of their information was arbitrary and capricious. The complaint also alleges a conspiracy on the part of the defendants to deprive the plaintiff of equal protection of the laws.

The defendants have moved for dismissal of this action. In their first motion, they move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure that the court is without jurisdiction contending that the amount in controversy does not exceed $10,000 as required by 28 U.S.C.A. § 1331, that the complaint does not state any facts constituting a federal question or a question arising under the constitution; and that the complaint does not allege facts showing that the plaintiff has been threatened with deprivation under color of state law. The defendants' second motion, which is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is based on their contention that the complaint fails to state a claim upon which relief can be granted.

■ As to the defendants' first motion, this court is of the opinion that jurisdiction in this action is founded on 28 U.S.C.A. § 1343, the implementing statute for 42 U.S.C.A. § 1983. The plaintiff has alleged that the defendants infringed upon his constitutional rights to free speech and privacy and that they conspired to deny the plaintiff equal protection of the laws. This court is, however, unable to find allegations of fact which support these claims of denial of substantive constitutional rights. That is, this court is of the opinion that the plaintiff's allegations charging that the defendants' were based on constitutionally impermissible reasons is unsupported by the complaint. Moreover, this allegation which is apparently based on the defendants' displeasure with Mr. Springston's policy of confidentiality does not support a claim of denial of the rights of free speech and privacy.

While there is some apparent authority that jurisdiction does not exist unless

there is a substantive constitutional claim in conjunction with a procedural due process claim, this court is of the opinion that the due process allegation is cognizable alone. It therefore appears that the sole question presented by this complaint is whether the defendants denied the plaintiff due process of law in the handling of his reassignment from guidance counselor to teacher.

In order for this court to determine which party should prevail on the defendants' second motion, two basic questions must be answered. First, whether the plaintiff has pled the existence of a constitutionally protected interest, and second, if the first question is answered in the affirmative, what quantum of due process is that interest to be afforded. Endicott v. Van Petten, 330 F.Supp. 878 (D.Kan.1971).

The plaintiff contends that his reassignment was tantamount to a dismissal because his expertise and experience was in the field of guidance counseling, not as an industrial arts or distributive education teacher. While it is clear that Mr. Springston was offered a teaching position in the Harrisonburg system, the plaintiff did not accept a position. This court does not accept the plaintiff's contention that the reassignment in the case at bar was tantamount to a dismissal; however, the court does recognize that under some circumstances a reassignment could represent an indirect attempt to eliminate a teacher who could not be directly dismissed. Such would be the situation in the case at bar had the motive of the school board been based on constitutionally impermissible reasons. However, as stated previously, this court does not believe that the plaintiff's complaint sufficiently alleges any violation of substantive constitutional rights. Moreover, there is no doubt that the school board had the power to exclude Mr. Springston from any position within the Harrisonburg school system. Section 22–203 of the Virginia Code (1969 Repl.Vol.). However, it is significant that the board offered him another position. Under Section 22–205 of the Code of Virginia, the division superintendent may, after the school board has passed a resolution giving him authority, reassign any teacher to any school within the division, provided the teacher's salary is not affected by such reassignment. While this court holds that the reassignment of the plaintiff was not tantamount to a dismissal, the question still remains whether the plaintiff had any constitutionally protected interest which was infringed upon by the reassignment. In making its decision, this court is forced to examine the law which has evolved from dismissal cases in order to determine if any analogy would apply to a reassignment such as the one involved in the case at bar.

The plaintiff in the case at bar was a probationary employee of the Harrisonburg City Schools. That is, he had not acquired the status of a teacher entitled to a continuing contract as provided by Section 22–217.3 of the Virginia Code (1971 Cum.Supp.). His contract was therefore still on a year to year basis. Had he taken the job offered in reassignment, he would, under this section, have acquired continuing contract status. As the term "probationary teacher" implies, Mr. Springston was serving on a year to year basis subject to the school board's evaluation of his ability. There can be no doubt that the school authorities have the right and duty to screen the officials, teachers, and employees as to their efficiency to maintain the integrity of the schools as a part of ordered society. Adler v. Board of Education, 343 U.S. 485, 72 S. Ct. 380, 96 L.Ed. 517 (1952). On the other hand, it also seems clear that, in administering internal operations, school boards, as arms of state government, do not constitutionally have the complete freedom enjoyed by a private employer. United Public Workers of America (C.I. O.) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). However, the Supreme Court in *Mitchell*, supra, recognized that the mere existence of constitutional restraints upon state governments does not give all state employees a

constitutional right to notice and a hearing before they can be removed.

Although the law in the area of teacher dismissal has not been precisely formulated at this time, it appears certain that there must be a substantial interest, other than the particular job from which the individual is removed, before that individual is entitled to procedural safeguards. Brinbaum v. Trussell, 371 F.2d 672, 678 (2nd Cir. 1966); Holliman v. Martin, 330 F.Supp. 1, 7 (W.D. Va.1971); Endicott v. Van Petten, supra at 883. This substantial interest is most clearly shown in cases in which an individual has been excluded from initial pursuit of a career because the state has denied that individual a license. A denial of this type was in issue in the case of Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) which involved a denial of an opportunity to take a bar exam. See also Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (doctor); Torcaso v. Watkins, 367 U.S. 488, 81 S. Ct. 1680, 6 L.Ed.2d 982 (1961) (notary public); Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897) (insurance agent). Clearly, that is not the situation in the case at bar.

Other courts have recognized a substantial interest as being an "expectancy of reemployment." Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971); Thaw v. Board of Public Instruction, 432 F.2d 98 (5th Cir. 1970); Long v. Board of Education, 331 F.Supp. 193 (E.D.Mo.1971); see also, Hodgin v. Noland, 435 F.2d 859 (4th Cir. 1970); Parker v. Board of Education, 348 F.2d 464 (4th Cir. 1965). However, it seems clear that the plaintiff in the case at bar, as a probationary teacher under a year to year contract, could not have an expectancy of reemployment as guidance counselor at Thomas Harrison Junior High School.

Other courts have recognized a protected interest in cases in which the government action has operated to bestow a badge of disloyalty or infamy, upon the individual with an attendant foreclosure from other employment opportunity. Cafeteria & Restaurant Workers Union, Local 473, A.F.L.–C.I.O. v. McElroy, 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Birnbaum, supra, 371 F.2d at 678–679. Other courts, including this one, applying this theory have recognized that, even where there is no disloyalty in issue, the danger in dismissing an individual without procedural due process lies in the effect which such dismissal will have on other employment opportunities. In Holliman v. Martin, supra, this court recognized that the right to a specified job is not in issue in these cases, rather the focal point is the personal liberty to pursue one's employment without arbitrary vilification and reckless exclusion by the state. In essence, when a government employee, such as a teacher is dismissed, that dismissal has a direct effect on the teacher's professional reputation and his ability to pursue his career effectively. Drown, infra, 435 F.2d at 1184; Birnbaum, 371 F.2d supra at 678. Recognizing the practical difficulties which a teacher will undoubtedly face in seeking employment in other school systems when he has not been rehired, these courts have recognized a protected interest. Perhaps the best statement of the interest of a non-tenured teacher appears in the case of Drown v. Portsmouth School District, 435 F.2d 1182 (1st Cir. 1970), where the Court of Appeals for the First Circuit stated;

> The teacher, particularly one at the outset of his career, is in the position of having invested in preparation for a career which depends mainly on the willingness of public bodies to employ him. Such willingness, as the complaint alleges, is seriously dissipated if not destroyed when an early employer refuses to rehire the teacher.
>
> \*    \*    \*    \*    \*    \*
>
> [The decision not to rehire without a statement of reasons] . . . effectively forecloses [the teacher] from attempting any self improvement, from correcting any false rumors and explaining any false impressions, from exposing any retributive effort in-

fringing on her academic freedom, and from minimizing or otherwise overcoming the reason in her discussions with a potential future employer. 435 F.2d at 1184.

This court recognizes that many of these same factors apply to a situation where, as in the case at bar, a guidance counselor with his particular training and expertise, is reassigned to a teaching position because it was felt by the school board that he was not serving the school effectively as a guidance counselor. This reassignment, which in the eyes of many could be looked upon as a "professional demotion", would seem to have an effect on the career possibilities of the individual in the counseling field, and while a reassignment does not carry as severe ramifications as a dismissal, it cannot be denied that there could easily be some effect on future employment possibilities.

However, the mere fact that this court has recognized a protected interest of the plaintiff in the case at bar, does not mean that the plaintiff was entitled to the procedural due process which his complaint alleges he was denied. It seems clear that the interest of the plaintiff must be balanced against the interest of the school board. See Cafeteria & Restaurant Workers Union, Local 473, A.F.L.–C.I.O. v. McElroy, supra, 367 U.S. at 895, 81 S.Ct. 1743; *Drown*, 435 F.2d supra at 1184.

In *Drown*, supra, the interest of the school board was described as follows:

The school board is interested primarily in its ability to insure the quality of the school system by employing teachers for a probationary period. During this period, the board attempts to evaluate teaching ability to determine if the teacher merits tenure. Such evaluations require judgments about many subjective factors which are difficult to document with precision, such as the ability of the teacher to inspire students, his mastery of and progress in his subject, and his capacity to work effectively with colleagues, supervisors, and parents. 435 F.2d at 1184.

This court feels that the same interests can be attributed to the Harrisonburg School Board, with the exception being that in the case at bar the board was not concerned with preventing Mr. Springston from obtaining tenure; their concern was with having a guidance counselor who was effective with students and teachers.

Now that the competing interest of the school board and Mr. Springston have been defined, this court, as did the court in *Drown*, supra, feels that it is appropriate to view the respective benefits and burdens as they relate to the claims made by Mr. Springston. As stated before there is great disagreement among the courts as to the quantum of due process, if any, that is required when a non-tenured teacher is not rehired. See Note, Non-tenured Teachers and Due Process: The Right to a Hearing and Statement of Reasons, 29 Wash. & Lee L.Rev. 100 (1972). It seems however that the majority of courts would require that non-tenured teachers be supplied a statement of reasons for their non-retention. Indeed, in *Drown*, supra, which this court views as presenting the best approach to the problem, the First Circuit held that due process required a school board to supply a statement of reasons. In *Drown*, the court of appeals, after examining the benefits and burdens associated with requiring a statement of reasons, held that the interests of a non-tenured teacher in knowing the basis for his non-retention were so substantial and that the inconvenience and disadvantage for a school board to supply this information was as slight that statements of reasons should be supplied. This court feels that under the limited circumstances of the case at bar, Mr. Springston was entitled to a statement of the reasons for the school board's decision not to rehire as a guidance counselor. However, as the complaint reveals the school board did give Mr. Springston its reasons on several occasions. This court

**320**

is of the opinion that the board's explanation was adequate and that due process required no more.

The plaintiff contends of course that he was entitled to a hearing with the right to present and cross-examine witnesses. However, this court relying again on the principles set forth in *Drown,* supra, is of the opinion that due process did not require a hearing of any type because the burdens imposed on the school board by requiring full hearings in reassignment cases outweigh any benefits which might befall the teacher who has been reassigned. To hold that a non-tenured teacher or guidance counselor is entitled to a full hearing on a reassignment would in the opinion of this court place an undue burden which would hamper the efficient function of local school boards.

Since it is the opinion of this court that the plaintiff was not entitled to a hearing on his reassignment, it is unnecessary to rule on the adequacy of the hearings which were conducted. Accordingly, the defendants' motion to dismiss for failure to state a claim upon which relief can be granted is sustained and this action is hereby dismissed.