## COLE v. PURDY, et al.
No. 73-30935.
Circuit Court, Dade County.
July 31, 1974.

Raymond M. Seidler, Miami, for the plaintiff.

Stuart L. Simon, County Attorney, Steven P. Lee, Assistant County Attorney for the defendants.

ALAN R. SCHWARTZ, Circuit Judge.

*Final judgment for plaintiff:* This action was tried before the court, which has heard and weighed the testimony presented, and read and considered the exhibits entered into evidence, and the memoranda of law and oral arguments submitted by counsel, both of whom have presented their respective positions in an outstandingly able and professional manner. Based upon these considerations, the court makes the following —

### Findings of fact

1. On May 7, 1973 the plaintiff Alan Cole was terminated from his employment as a probationary police officer with the Dade County Public Safety Department by a dismissal from that position effectuated by Acting Director of Public Safety Barney. The termination was not preceded by any constitutionally effective hearing before Chief Barney, although one had been requested by Cole. Prior to his "independent" decision to terminate Cole, Barney had consulted only, and then only cursorily, with Lt. J. K. Russell, the supervisor of the department's internal review section. Russell, in turn, had been the recipient of a report from and had consulted with Sgt. C. D. Skelton who had conducted an "investigation" into the charges against Officer Cole.

2. The grounds upon which Officer Cole was terminated had to do with the alleged falsification of information provided to the department in his employment applications. These alleged falsifications fell into two very separate and constitutionally discrete classifications. One group dealt with Cole's alleged failure to give the department information concerning prior applications to, and refusals of employment by other police agencies, as well as a misrepresentation as to his selective service classification; these grounds

may be classified as *non*-constitutionally protected bases for dismissal. The other group of charges concerned claims vigorously asserted by Sgt. Skelton to, or rather *at*, Officer Cole, that Cole had somehow "falsified" his application by not revealing his entirely lawful and constitutionally protected activities in asserting his First Amendment rights of free speech and free assembly during a campus demonstration at the University of Kentucky in 1970, while he was a student there. Sgt. Skelton based his accusation against Cole on these latter grounds upon a wildly hearsay "report" — filled with scurrilous and shocking material obviously originally obtained in what may be described as a revolting and even a nauseating manner by the FBI and Secret Service — and which had been supplied to the public safety department by the Secret Service itself.[1] Sgt. Skelton drew from information the implication — totally unjustified even by anything said in the report — that Cole was or may have been a "subversive," and one, at that who may have had some dangerous designs upon the life of the president himself. This implication was and is absurd, and would be laughable but for the fact that it was expressed, and, as we shall see, disseminated by officers of the public safety department, and but for the fact of its devastatingly adverse effect upon the plaintiff here.

3. Since the reasons assigned for Cole's discharge do not differentiate between the two types of alleged "misrepresentations," and since the report of the investigation conducted by Skelton and submitted to Russell refers to the constitutionally protected "charge" in a prominent, and, in fact, a *predominate* manner (it formed the *first* "finding of fact" made by Sgt. Skelton concerning Cole's supposed misconduct), the court must and does conclude, and so finds as a fact that at least one of the reasons that Officer Cole was terminated was because he had engaged in constitutionally protected activities and because it was thought — contrary to constitutional requirements which preclude even asking such a question in an application for public employment — that his failure to reveal those activities to the public safety department constituted a "misrepresentation" which could properly form a basis for his dismissal.

---

1. The Secret Service obtained this report on Cole simply because Cole had been fortuitously assigned to the police detail at President Nixon's Key Biscayne residence. Apparently the report on Cole, which was introduced into evidence as plaintiff's exhibit 3, is but one of probably thousands, perhaps millions, of similar reports contained in the files of federal agencies presumably on everyone who has ever participated in a "demonstration" or is otherwise regarded as "dangerous" by those supposedly responsible for *guarding* our liberties. While, in view of recent

4. Subsequent to Officer Cole's discharge he made unsuccessful application to a number of other police agencies, including one to regain his former position with the North Miami Beach Police Department, which he had held when he applied for employment with the public safety department. The circumstances of his discharge have effectively precluded him from ever again obtaining such police employment, in which he desires to engage and for which he seems well suited. His "disqualification" appears not to stem mainly from the grounds now asserted by the defendants to be the sole basis of his discharge — the alleged misinformation concerning his prior employment applications and his draft status, but rather from references made to his status as a supposed "dangerous subversive." The evidence contained a sharp conflict in testimony between that of Skelton, who denied that he had made any such allegations subsequent to Cole's discharge, and that of Lt. San Souci, corroborated by Officer Wilson, both of the North Miami Beach Police Department, who stated that he had. The court resolves this credibility question in favor of Lt. San Souci and against Sgt. Skelton and finds as a fact that the "subversive" activity — that is, speaking constitutionally, the clearly-shown-to-be *non*-subversive, constitutionally protected activity — was stated by Skelton to have been one, and in the minds of other police agencies, obviously the most significant reason for his discharge.

Based upon the foregoing, the court makes the following —

### Conclusions of law

1. The plaintiff was unlawfully and unconstitutionally discharged by the defendants without a prior effective hearing before the discharging agency — in this case Acting Director Barney. The court considers that such a hearing was required prior to discharge

---

events, the court, probably in common with most of our citizens has become somewhat numbed by repeated shocking revelations of this kind, the court confesses that even his now-elevated threshold of outrage was more than surpassed both by the contents of the report — which contained such information as Cole's standing in high school, the identity of his father-in-law, his sexual proclivities, the contents of a "confidential" psychiatric conference held during his selective service examination, and the contents of an "anti-war" letter (!) he supposedly wrote some years before — but also, and more importantly, by the realization that so many of our citizens must be similarly catalogued by the federal government. The court is just as shocked at the blithe and unconcerned manner in which this outrageous information was employed, implicitly believed, and followed in its contents and all of its vicious implications by responsible officers of the Dade County Public Safety Department.

under the federal and Florida constitutions upon several alternative grounds —

(a)   Since at least one of the reasons for Cole's discharge was his prior constitutionally protected assertion of his right to freedom of speech and freedom of assembly, under the decisions of the Supreme Court in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570; and Board of Regents v. Roth, 408 U.S. 464, 92 S.Ct. 2701, 2708, 33 L.Ed. 2d 548, it is plain that, at the very least, the plaintiff could not be discharged without a prior, and full and fair hearing, which would have demonstrated the lack of substance factually and legally to those charges and the contents of the Secret Service report. This is *not* a case such as those referred to in *Roth* at 92 S.Ct. 2708, and at n.14 in which there has been no showing whatever that the assertion of the plaintiff's constitutional rights played any part in his discharge. Without the necessity of reaching the question of whether reinstatement would be automatically required even if there were, as here, other *non*-constitutional bases for a discharge, if effected *after* a hearing — the court must conclude that the fact that constitutionally protected rights were effectively shown to have played a real part in the actions of the defendants at least entitles the plaintiff to a pre-dismissal hearing when, as in this case, no such hearing had been permitted.

(b)   Moreover, under the statement of the *Roth* case supra at 92 S. Ct. 2707-2708, it is clear that the nature of all the charges — *including* the "non-constitutional" reasons but particularly the "subversive" one — brought against Cole entitles him to a hearing at which he presumably might have been able to "clear his name," 92 S. Ct. at 2707, n.12. The obvious effect of both the charges and findings that he had deliberately made misrepresentations on his application[2] and that he was a potentially-dangerous "S.D.S.

---

2.   The defendants have asked the court to hold that the trial *before the court* in this case was sufficient to provide Cole with his hearing; and that the admissions supposedly made by Cole in the investigation before Sgt. Skelton precluded the necessity for a hearing at which the thus-*admitted* facts would have been found anyway. The insurmountable problem with this approach is that it is not the court, but the officials of the public safety department who are charged with the responsibility of making findings of fact after a proper hearing. Moreover, Officer Cole did *not* admit *before the court* either that he had made the misrepresentations in question (he provided explanations for the statements which might be accepted by the responsible trier of fact) or even that he had made the admissions which are contained in the transcript of the investigation. These issues are likewise for the administrative officers in question, not this court.

subversive" was to put Cole's "good name, reputation, honor, or integrity . . . at stake. . ." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L. Ed. 2d 515, quoted in Roth at 92 S. Ct. 2707. It is even more obvious, in view of the court's findings of the post-discharge statements made by Skelton concerning his "subversive" activities, that the charges against Cole both might and have been shown in fact to have "seriously damaged his standing and associations in his community," 92 S. Ct. at 2707.

(c) Finally, even assuming that the reasons for the discharge were *solely* the non-constitutionally protected grounds, and even assuming that findings of fact as to the misrepresentations had been made, the court notes the testimony of Director Purdy that, under some circumstances, a discharge would not necessarily occur because of such misrepresentations. This testimony raises the application of the alternative holding in the *Perry* case, at 92 S. Ct. 2699, to the effect that when there is a "de facto" right to continued employment, there is a concomitant right to a hearing to determine whether the conditions of the continued employment have been met. Thus, Cole was entitled to a hearing, if only to show that his supposed misrepresentations were made, as he contends, either inadvertently or in good faith, and therefore, that under Director Purdy's testimony, they would not have resulted in his discharge.

2. Under the circumstances of this case in which the reasons given for dismissal were not differentiated between the wholly improper and personally devastating ones relating to subversion, and those which did not, Cole was entitled to a statement as to the specific grounds on which he had been found guilty. See, e.g. Ferguson v. Thomas, 5 Cir. 1970, 430 F. 2d 852, 856; Drown v. Portsmouth School District, 1 Cir. 1971, 435 F. 2d 1182.

3. Since the plaintiff's discharge was unconstitutionally effected, he must be restored to the position he would have occupied had the unconstitutional action not been taken against him.

### Final judgment

Based on the foregoing findings of fact and conclusions of law, it is considered, ordered and adjudged that judgment is hereby entered in favor of the plaintiff Alan Cole, and against the defendants, E. Wilson Purdy, as Director of the Dade County Public Safety Department, and Dade County, Florida. The defendants are ordered forthwith to restore Alan Cole to his employment with the Dade County Public Safety Department in the capacity which he would now occupy were it not for the discharge of May 7, 1973, and to grant him all back pay and other benefits which would have otherwise accrued from that time until that of his reinstatement.